[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name is Binhminh T. Nguyen, were married on August 17, 1975 at Seneca, Illinois. The plaintiff has resided continuously in the State of Connecticut for at least twelve (12) months immediately prior to the date the complaint was filed. The marriage between the parties has broken irretrievably without any reasonable prospects of reconciliation. There are no minor children issue of this marriage, and the defendant does not presently have any minor children. Neither CT Page 6555 party has received state assistance. The parties do have two adult children that are issue of the marriage.
One child has graduated from college. The second child will graduate college in June, 1998.
The parties are in dispute as to the cause of the breakdown of the marriage. From the evidence presented, the court finds that the plaintiff is responsible for the breakdown of the marriage.
The plaintiff is forty-six years old.
The plaintiff has been to Vietnam on three separate occasions since the parties married. He used his 401K funds, as well as his VISA account, as well as obtaining loans from friends to finance the trips. His first trip was in 1990 where he spent approximately $2000 to purchase a home and furniture for his parents. In January of 1998, he went to Vietnam with a female friend. She has stayed overnight on occasions at his apartment.
The plaintiff is presently employed by Ridgefield Pharmaceuticals, Inc. as a machine operator.
The plaintiff's employer is also known as Boehringer Ingelheim Corporation.
The plaintiff commenced working at Ridgefield Pharmaceutical, Inc. in 1988 or 1989.
The plaintiff's gross earnings in 1998 through March 29, 1998 amounts to $8924.44. That consists of regular pay of $7548.29, bonus of $1313.75, group life of $62.40. Included in the $8924.44 is non-taxable income consisting of a 401K in the amount of $443.13, dental pre-tax $36, medical pre-tax in the amount of $171.72, for a total non-taxable income of $650.85 and an adjusted gross of $8273.59. His year-to-date deductions through March 29, 1998 consists of Social Security $540.44, Medicare $126.39, FICA $1691.75, and state income tax $526.39, for total taxes of $2884.97. His financial affidavit claims a gross weekly average income of $637. The plaintiff filed a financial affidavit dated January 28, 1997. That financial affidavit showed that his gross weekly income, including overtime, was $750. The reason that his year-to-date gross income for 1998, as shown on his financial affidavit, is less than the CT Page 6556 amount shown on his financial affidavit of January 28, 1997, is due to the fact that he was in Vietnam between January 26, 1998 and March 8, 1998. He worked between January 1, 1998 and January 23, 1998, and from March 10, 1998 to March 28, 1998. He has taken the average gross weekly income of what he earned in 1998 and shows that as his current average gross weekly income. He claims that he is not able to work overtime at the present time due to a lack of energy. The court finds that that claim, at best, is not credible. He did work overtime during 1997.
From the evidence presented, the court finds that his gross weekly income is $750, less deductions.
The plaintiff has $18,000 in his bank account at First Union. He withdrew $21,433.93 from his 401K plan. The employer withheld $4166.40 for federal taxes, and the plaintiff received a net check of $17,267.53, which he deposited into his First Union account. An order was entered on April 14, 1997 as a result of a motion filed by the plaintiff to preserve assets and enjoin transfers, coded 116, that was violated by the plaintiff when he withdrew the $21,433.93 from his 401K account.
The plaintiff's financial affidavit shows a balance in his 401K plan of $23,516, less a loan balance of $3302, for a net value of $20,214. His loan balance shown on his financial affidavit is as of December 31, 1997, and not as of the date of his financial affidavit. He has made $52 weekly payments since that date. Further, the $23,516 balance in his 401K plan is also the balance as of December 31, 1997, and not as of the date of his financial affidavit. He has continued to contribute 5 percent to that plan as has his employer.
The plaintiff owns a 1987 Dodge, with a value of $600, and no loan balance, and a 1987 Mitsubishi, with a value of $150, and no loan balance.
The plaintiff's financial affidavit, dated April 7, 1998, shows liabilities totaling $31,781. All of those liabilities were incurred by the plaintiff. His financial affidavit, dated January 28, 1997, showed a GM credit card car loan with a balance of $2817. He now shows a car loan balance of $9212. His earlier financial affidavit showed a Shell MasterCard balance of $3801, that now has a balance of $8461. His prior financial affidavit had a Fleet card balance of $3504, and that balance has been reduced to $2534. His prior financial affidavit had a City Bank CT Page 6557 MasterCard balance of $2000, and that balance is the same. He now has a MasterCard Exxon balance of $9574. He had that liability as early as March of 1997, but was not shown on his earlier financial affidavit.
The cost for medical COBRA benefits for the defendant is $189.40 monthly, and an additional $31.20 monthly for dental benefits.
There is a family home located at 13 Valley Road, Danbury, Connecticut. It has a fair market value of $140,000. The mortgage balance as of March 31, 1998 is $114,692.90. The total equity is approximately $25,300. Title to the home is in the name of the plaintiff and the defendant's brother. When the plaintiff vacated the family home, the defendant was still residing there, as well as the two adult children from the marriage, as well as the defendant's mother, as well as the defendant's brother. The plaintiff had been paying two-thirds of the mortgage payment, and the defendant's brother was paying one-third of the mortgage payment.
The division of the two-thirds/one-third for the mortgage payment between the plaintiff and the defendant's brother was based on the approximate amount of space that was being used by each party. After the divorce commenced, the defendant's brother married and his wife also moved into the home. At that time, one of the adult children of the parties was still residing in the home. The plaintiff vacated the home in approximately April of 1997.
The original purchase price of the family home in 1991 was approximately $155,000.
The defendant's brother paid the initialdeposit on the home in the amount of $13,950 on June 12, 1991. He paid an additional $19,948.31 at closing on September 5, 1991, for a total of $33,898.31. The agreement between the plaintiff and the defendant's brother was that the down payment was supposed to be equally divided between them which would have resulted in each party making a total down payment of approximately $17,000. At the time of closing, the defendant paid back her brother $10,000 from funds she had accumulated while residing in Pennsylvania, which therefore reduced his down payment to $23,898.31. Therefore, he has paid into the house towards its purchase approximately $7000 more than he should have. CT Page 6558
The plaintiff previously owned the Saigon Market, an Asian food store, with a friend. It was purchased in 1985. At that time, the defendant was living in Pennsylvania with the two minor children. At the plaintiff's request, the defendant came to Connecticut with the children in December, 1987, and helped him run the market.
The Saigon Market was sold in 1991. The plaintiff was a 50 percent owner of the market. The sale price was $50,000. The plaintiff did not receive his $25,000 share. An attorney was retained to attempt to collect the $25,000. The Saigon Market had been sold by the plaintiff to his partner. A lawsuit was brought against the buyers, but was withdrawn in approximately January of 1998 by the plaintiff after the trial date had been scheduled.
The plaintiff did not receive any money as part of the withdrawal of that action.
The parties moved to Pennsylvania shortly after they married and purchased a home in Pennsylvania in 1977. That home was sold in 1988 for $26,500. The parties netted $19,618.20 from the sale. The plaintiff had moved to Connecticut in 1985 from Pennsylvania to go into the Saigon Market business with a friend.
The defendant had savings that she accumulated living in Pennsylvania up until the time she moved to Connecticut, totaling approximately $28,600. The defendant withdrew $15,000 from one of her accounts and used $6000 of it for her trip to Vietnam in April, 1994, for airfare for herself and her mother, as well as spending money in Vietnam. The other $9000 deposited into a checking account. Some of that $9000 was used towards college expenses for both children.
The parties are in dispute as to whether the defendant withdrew approximately $15,000 from the plaintiff's retirement plan in 1985 and retained the money. From the evidence presented, the court finds that the defendant did not withdraw that money.
As of April 7, 1998, the plaintiff was in arrears in the amount of $6668.84 in his pendente lite payments to the defendant. That amount is subject to adjustments based on the plaintiff's employer withholding money from his pay.
The defendant owns a 1986 Cadillac with a value of $12,000, and no loan balance, and a 1985 Mercury with a value of $50, and CT Page 6559 no loan balance. She has approximately $120 in a bank account. She also has a possible medical malpractice claim. She has liabilities totaling $9742. Her financial affidavit, dated March 24, 1997, showed liabilities totaling $4311. That affidavit showed a mortgage arrearage of $3561, as well as a liability to the Danbury Hospital with a balance of $300. Her present affidavit shows the Danbury Hospital with a balance of $290. Her earlier affidavit showed a liability to Upstate Dental with a balance of $450. Her current affidavit shows that balance to be $130.
The defendant suffers from allergies for which she receives shots once a week. She has asthma that she believes is from the plaintiff's smoking. The court finds that there has been no credible testimony to substantiate her belief that her asthma is from his smoking. Her allergies are affected from odors from hair dressing as a result of which she tries to limit her work to haircuts. She sees her doctor once every three months for her allergies and takes allergy pills and asthma pills. She was injured on January 6, 1997 at a dentist where she received nerve damage. As a result of it, her hand is cold and numb and weak and shakes on occasion. No lawsuit has been commenced as of today's date.
She also has a problem with her left shoulder when she lifts her arm, and has a problem with her wrist.
She also has a problem with her left shoulder when she lifts her arm, and has a problem with her wrist.
The defendant did not work between 1993 and 1996. She returned to work in 1996 after the divorce action was filed by the plaintiff. In 1997, the defendant had gross wages and tips totaling $6197.
The defendant presently works four days a week, 5 hours each day, for which she receives a gross weekly pay of $105. She also receives tips averaging $8 to $10 daily. For the purpose of financial orders hereinafter entered, the court finds that her average gross weekly pay is $105, plus an additional $40 in tips, for a total gross weekly of $145, less deductions.
This court has considered the provision of § 46b-82
regarding the issue of alimony, and has considered the provision of § 46b-81 (c) regarding the issue of property division, and CT Page 6560 has considered the provision of § 46b-62 regarding the issue of attorney's fees. The court enters the following orders:
A. BY WAY OF DISSOLUTION
1. The marriage between the parties is dissolved, and each of the parties is declared to be single and unmarried.
B. BY WAY OF ATTORNEY'S FEES
1. No attorney's fees are awarded in favor of the either party.
C. BY WAY OF PROPERTY DIVISION
1. The plaintiff is ordered to quitclaim to the defendant all of his interest in the marital residence located at 13 Valley Road, Danbury, Connecticut. The defendant is to hold the plaintiff harmless on the mortgage, taxes and all other costs associated with the real property. She is to make reasonable efforts at least once a year commencing June 30, 1999, and annually thereafter, to have the plaintiff released from his liability under the promissory note and mortgage deed. The quitclaim deed is to be delivered to counsel for the defendant by June 30, 1998.
2. The Union Savings Bank account shown on the defendant's financial affidavit is awarded to the defendant.
3. The two motor vehicles shown on the defendant's financial affidavit are awarded to the defendant.
4. All personal effects, furniture and furnishings in the possession of the defendant are awarded to the defendant.
5. All personal effects, furniture and furnishings in the possession of the plaintiff are awarded to the plaintiff.
6. The American Capital Insurance Company savings account shown on the plaintiff's financial affidavit, with a balance of $505, is awarded to the plaintiff.
7. The defendant is awarded $8633.76 from the plaintiff's First Union account, which sum represents one-half of the net check that he received when he withdrew funds from his 401K plan. The balance in that account is ordered held frozen pending a CT Page 6561 determination by the court of the amount of pendente lite arrearage owed by the plaintiff to the defendant, and a determination as to whether that arrearage, if any, should be paid in full or how that arrearage, if any, should be discharged.
8. The defendant is awarded $7000 from the plaintiff's 401K plan. It is to be transferred to her by means of a Qualified Domestic Relations Order. The defendant is to prepare the order. The court retains jurisdiction over any disputes that may arise involving the language to be used. The plaintiff is solely responsible for any outstanding loan against his 401K plan, and is to hold the defendant harmless.
9. During the course of the trial, there was evidence that the defendant had paid various expenses from funds held solely in her name for the purposes of legal fees to Attorney Judith Goldberg and Attorney Joseph Brophy, as well as taxes due when the plaintiff sold the Saigon Market, and for tax preparation of the parties. Any claims of either party against the other arising out of the above payments are considered discharged as a result of the other orders entered by this court.
10. The plaintiff is to pay all the liabilities shown on his financial affidavit and hold the defendant harmless.
11. The defendant is to pay all the liabilities shown on her affidavit and hold the plaintiff harmless.
D. BY WAY OF ALIMONY
1. The plaintiff is ordered to pay to the defendant alimony in the sum of $175 per week. Alimony shall terminate upon the earliest of the following events: (a) the death of the plaintiff; (b) the death of the defendant; (c) the defendant's remarriage
2. The provisions of § 46b-86 (a) and § 46b-86 (b) are applicable.
3. The parties are to divide equally the cost for COBRA medical and dental insurance for the defendant for so long as such coverage is available through the plaintiff's place of employment.
4. The plaintiff is to name the defendant as beneficiary of $50,000 unencumbered life insurance of the $100,000 life CT Page 6562 insurance shown on his financial affidavit for so long as there is an outstanding alimony order or any arrearage arising from such order.
E. PENDENTE LITE ORDERS
1. All pendente lite orders remain in effect until the date this decision is filed. Any arrearages are not merged into the judgment and survive the judgment. In the event the parties are unable to agree as to the amount of such arrearages, if any, and how they are to be repaid, then they wiIl have to file a short calendar motion for that purpose.
F. MISCELLANEOUS ORDERS
1. Counsel for the plaintiff is to prepare the judgment file within thirty (30) days and forward it to counsel for the defendant for signature and filing.
2. The parties are to exchange copies of their federal and state income tax returns by certified mail, return receipt, or registered mail, return receipt, within fifteen (15) days after such returns have been filed for so long as there is any outstanding alimony order or any outstanding arrearage from any suchorder.
3. The plaintiff is restored her maiden name of Binhminh T. Hoai Nguyen.
Axelrod, J.